UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 09-22027-CIV-GOODMAN

[CONSENT CASE]

VINCENT JONES, et al.,

    Plaintiffs,

v.

CARSWELL PROPERTY
MAINTENANCE, INC., et al.,

    Defendants.

_____

## ORDER DENYING DEFENDANTS' MOTION FOR NEW TRIAL

This cause is before me on Defendants' Motion for New Trial. [ECF No. 176]. The Court has reviewed the motion, Plaintiffs' response, Defendants' reply, and is otherwise familiar with the facts of this case.[1] [ECF Nos. 179; 192]. For the reasons below, Defendants' motion is **DENIED**.

**I.**    **Introduction**

In this lawsuit, Plaintiffs seek unpaid overtime wages pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, Article X, § 24 of the Florida Constitution, and the Florida Minimum Wage Act, § 448.110, Florida Statutes. [ECF No. 58]. The Court held a trial on Plaintiffs' claims from September 12 through September 16, 2011 and the jury returned its verdicts on September 19, 2011. The jury found that Defendants were liable on all claims and awarded a total of $61,475.00 to the eight Plaintiffs. [ECF No. 169]. On October 12, 2011, the

---

[1] The Court notes that Defendants initially did not file a reply but were later authorized by this Court to file an untimely reply. [*See* Order Denying Defendants' Renewed Motion for Judgment as a Matter of Law for a full explanation of the circumstances surrounding Defendants' reply].

Court granted Plaintiffs' unopposed motion for liquidated damages in an amount equal to Plaintiffs' actual damages and entered a Final Judgment in Plaintiffs' favor.

In their motion for new trial, Defendants raise four general arguments, each of which will be discussed below. Defendants however, cite little legal authority and neither refer to nor provide a copy of the trial transcript in support of their arguments. Instead, they often ask the Court to rely on its recollection of the trial testimony. Plaintiffs frequently take issue with the factual representations provided by Defendants but they too fail to support their contentions with the trial transcript. For the reasons below, the Undersigned concludes that Defendants failed to carry their burden and therefore the motion is **DENIED**.

## II. STANDARD FOR A NEW TRIAL

Federal Rule of Civil Procedure 59 provides that a Court may grant a new trial "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." "[M]otions for a new trial are committed to the discretion of the trial court." *Montgomery v. Noga*, 168 F.3d 1282, 1295 (11th Cir. 1999). "Because it is critical that a judge does not merely substitute his judgment for that of the jury, 'new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great-not merely the greater-weight of the evidence.'" *Lipphardt v. Durango Steakhouse of Brandon, Inc.*, 267 F.3d 1183, 86 (11th Cir. 2001) (quoting *Hewitt v. B.F. Goodrich Co.*, 732 F.2d 1554, 1556 (11th Cir. 1984)).

## III. ANALYSIS

### a. THE VERDICT WAS NOT AGAINST THE GREAT WEIGHT OF EVIDENCE

Defendants did not provide in their new trial motion the grounds that purportedly support their argument that the verdict was contrary to the great weight of the evidence. Defendants attempted to do so for the first time in reply to Plaintiffs' response. [ECF No. 192]. *But cf.* S.D.

Fla. L. R. 7.3(c) (providing that a "reply memorandum shall be strictly limited to rebuttal of matters raised in the memorandum in opposition without reargument of matters covered in the movant's initial memorandum of law"). In their reply, Defendants contend that the only evidence supporting Plaintiffs' claims was "their own self-serving testimony corroborated only by the vague and uncertain testimony of Baldwin." [ECF No. 192, p. 2]. Defendants also essentially cherry-pick from the large amount of evidence presented at trial in an attempt to demonstrate that the jury did not receive sufficient evidence to find for Plaintiffs. [*Id.* at pp. 3-5].

In a nearly-simultaneously-issued Order Denying Defendants' Renewed Motion for Judgment as a Matter of Law, the Court already thoroughly detailed the evidence presented at trial and concluded that it supported the jury's verdicts. Therefore, the Court will only briefly summarize the evidence here.

In that order, the Court noted that Plaintiffs testified they worked the claimed unpaid hours, that non-party witnesses (Phyllis Carswell's neighbor, Jeannette Baldwin, and two of Defendants' foremen) substantiated Plaintiffs' testimony, and that Phyllis Carswell herself acknowledged the time sheets were incomplete. While Phyllis Carswell testified she made cash payments to Plaintiffs, she could not substantiate these claims using Defendants' time sheets and eventually admitted these payments were intended as bonuses and not to compensate for overtime. One of the two foremen, Clarence Jeffries, also testified that he never actually saw any cash in Plaintiffs' pay envelopes.

Based on the evidence presented at trial, the Court concludes that the verdict was <u>not</u> against the great weight of the evidence.

### b. USE OF PHYLLIS CARSWELL'S PRETRIAL STIPULATION FOR IMPEACHMENT WAS NOT ERROR

Before trial, the parties stipulated to the following:

> 3. CARSWELL PROPERTY MAINTENANCE, INC. f/k/a THOMAS & CARSWELL, INC. and PHYLLIS CARSWELL are employers of the Plaintiffs within the meaning of the FLSA and Fla. Const. Art. X, §24.
>
> 4. Defendant PHYLLIS CARSWELL was involved in the day-to-day operations of the company and supervised the Plaintiffs' work.
>
> 5. Defendant PHYLLIS CARSWELL was involved in decisions regarding the Plaintiffs' time and pay.

[ECF No. 132, p. 3]. During trial, however, Defendant Phyllis Carswell testified that Thomas & Carswell, Inc. had been owned by her ex-husband and that Carswell Property Maintenance, Inc. was a new corporation which she established in 2006 after her divorce. Phyllis Carswell also testified that Carswell Property Maintenance, Inc. was not a successor corporation to Thomas & Carswell, Inc., that she had not been Plaintiffs' employer during the time Plaintiffs worked for Thomas & Carswell, Inc., and that her counsel made these stipulations without her knowledge or approval. Subsequently, the Court allowed Plaintiffs to impeach Phyllis Carswell using her pretrial stipulation.[2]

Defendants now contend that allowing Plaintiffs to impeach Phyllis Carswell using the stipulation is grounds for a new trial. The precise reasoning underlining Defendants' argument is somewhat unclear, but it appears they contend: (1) that it is improper to allow a witness to be impeached by her own stipulation (and that it was doubly improper in this case because Plaintiffs used the stipulation to imply that, contrary to testimony she had already given, Phyllis Carswell

---

[2] Certain Plaintiffs sought compensation that would have been barred by the statute of limitations absent a finding that Defendants' FLSA violations were willful. In order to obtain compensation for this period from Phyllis Carswell and Carswell Property Maintenance, Inc., it was essential to demonstrate that Phyllis Carswell was Plaintiffs' employer during this period and that Carswell Property Maintenance, Inc. is the successor to Thomas & Carswell, Inc.

stipulated that Carswell Property Maintenance, Inc. was the successor entity to Thomas & Carswell, Inc.); (2) that to the extent the stipulation could be construed to support Plaintiffs' successor entity theory, it is only because the stipulation is ambiguous and the Court improperly construed it against Defendants; and (3) Plaintiffs used the stipulation to imply a false, hypothetical relationship between Phyllis Carswell and her company with Thomas & Carswell.

Plaintiffs respond that their use of the stipulation to impeach Phyllis Carswell was proper and was necessary because her trial testimony was contrary to the stipulation. Moreover, Plaintiffs contend the stipulation is not ambiguous and directly states the propositions for which it was used. According to Plaintiffs, Defendants' objections to the stipulation's use are merely an attempt to retract and contort a validly made stipulation.

The Court notes first that it is not improper to impeach a party witness with her own stipulation when the witness testifies contrary to the stipulated facts. *United States v. Michtavi*, 155 F. App'x 433, 435 (11th Cir. 2005); *see also Busby v. City of Orlando*, 931 F.3d 764, 771 n.4 (11th Cir. 1991) ("[V]oluntarily submitted pretrial stipulations are generally considered binding"). In *Michtavi*, the defendant signed a stipulation agreeing that individual newspaper articles were published on certain dates but then disputed the publication dates when he was cross-examined. When asked whether he had lied in the stipulation or was incorrect in his testimony, the defendant "stated that he signed the stipulation because his attorney gave it to him, and did not notice the dates." The Eleventh Circuit held that the trial court "did not abuse its discretion . . . in allowing the Government to impeach Michtavi with his own stipulation." The Eleventh Circuit also noted that the plaintiff in that case was not denied a fair trial merely by virtue of a brief inquiry into "whether he was lying or mistaken when he signed the stipulation."[3]

---

[3] The case cited by Defendants that allegedly stands for a contrary proposition, *Downs v. American Emp. Ins. Co.*, 423 F.2d 1160 (5th Cir. 1970), is inapposite. In that case, the parties

Defendants are therefore not entitled to a new trial merely because the Court allowed impeachment through the stipulation. The Court also finds that, even if the impeachment were improper (which it was not), then it would have been harmless error. *Betterbox Commc'n Ltd. v. BB Techs., Inc.*, 300 F.3d 325, 329 (3d Cir. 2002) ("In a civil case, an error is harmless if it is highly probable that it did not affect the complaining party's substantial rights"). This is because Defendants' own foreman testified that Phyllis Carswell was "the boss" and ran the company during the time Plaintiffs were employed by Thomas & Carswell, Inc. and, as Defendants acknowledged in their motion, Phyllis Carswell testified that she was a 50% owner of Thomas & Carswell, Inc.

Defendants' second argument must also be rejected because the stipulation is not ambiguous. To support this argument, Defendants cite *Henry Hanger & Display Fixture Corp. of America v. Sel-O-Rak Corp.*, 270 F.2d 635 (5th Cir. 1959). In *Henry Hanger*, a patent infringement case, Defendants' president testified before a special master that defendants were no longer manufacturing a rack resembling the patented rack and he drew a picture of the new type of rack defendants currently produced, in order to show the differences. Afterwards, the special master stated that "since this new slack rack is not involved in this law suit by any of the pleadings as now framed it is my view that the new slack rack doesn't enter into this litigation. Is that correct?" Counsel for both parties agreed. The special master subsequently died and defendants took the position during a later hearing before a new special master that, since the pleadings at the time of the stipulation included reference to a "colorable imitation," Plaintiffs stipulated none of defendants' new racks infringed their patent. The former Fifth Circuit found

---

stipulated to the plaintiff's total medical expenses and then the defendant attempted to discredit the plaintiff by asking her if certain expenses included in that total were properly included. The former Fifth Circuit held that defendant, having agreed to the total number, could not later attempt to discredit the plaintiff by questioning her regarding the component parts of the total.

the stipulation was vague because it was not clear whether the parties meant to stipulate that the new rack did not infringe or whether the pleadings "as then framed did not raise the issue of infringement as to the particular rack."

This case raises no such ambiguities. The stipulation clearly contains the following language: "CARSWELL PROPERTY MAINTENANCE, INC. f/k/a THOMAS & CARSWELL, INC. and PHYLLIS CARSWELL." The meaning of the key term in this phrase, "f/k/a," or formerly known as, is widely used and not ambiguous. *See e.g.*, *Western Refining Yorktown, Inc. v. BP Corp. N. Am. Inc.*, 618 F. Supp. 2d 513, 528 (E.D. Va. 2009) ("use of 'f/k/a' (formerly known as) in the caption of the Complaint raises the possibility of various changes in business form/ownership"). No interpretation is needed to conclude that Defendants stipulated that Carswell Property Maintenance, Inc. was formerly known as Thomas & Carswell, Inc. It is simply the literal meaning of the stipulation as drafted. Moreover, during trial neither Plaintiffs nor the Court even suggested a particular interpretation of the stipulation. It was simply read to the jury during the trial, used in the jury instructions, and, as Defendants acknowledge in their motion [ECF No. 176, p. 5], "Plaintiffs had the right to rely upon the stipulation."

Defendants' final argument, that the stipulation was misused to imply a hypothetical successor relationship between the two companies, also fails. The relationship was, legally speaking, not hypothetical. Defendants clearly and plainly stipulated that Carswell Property Maintenance, Inc. was formerly known as Thomas & Carswell, Inc. Defendants' reliance on *Miller v. Amusement Enterprises, Inc.*, 394 F.2d 342 (5th Cir. 1968), which involved a legal, not factual, stipulation in support of a contrary argument, is puzzling. Not only did the former Fifth Circuit conclude that the stipulation in that case did not involve a hypothetical, but it also

7

"refrain[ed] from deciding the question . . . of whether the parties can, by stipulation, bind the court as to a theory of law."

### c. RELAXED BURDEN-SHIFTING SCHEME WAS APPROPRIATELY APPLIED

Defendants argue that the Court erred when it determined that Plaintiffs introduced sufficient evidence to activate the relaxed burden-shifting scheme. This argument is not persuasive for the same reasons described above in section III.a and in the Court's Order Denying Defendants' Renewed Motion for Judgment as a Matter of Law.

### d. THE COURT DID NOT INAPPROPRIATELY LIMIT DEFENDANTS' IMPEACHMENT OF PLAINTIFFS

Defendants argue that the Court improperly heard and incorrectly resolved Plaintiffs' motion in limine regarding Plaintiffs' substance abuse and arrest histories and, as a result, improperly limited Defendants' impeachment of the Plaintiffs' credibility. The Court ruled that Defendants must demonstrate a reasonable basis to conclude that a plaintiff had been convicted of a felony before questioning that plaintiff about it under Federal Rule of Evidence 609 and also exercised its discretion to limit certain impeachment questioning regarding bias under Rule 608.

Defendants argue that Plaintiffs' *in limine* motion was untimely and should not have been considered, but they cite to no authority supporting the view that this Court did not have the discretion to hear Plaintiffs' motion as part of its inherent trial management authority. To the contrary, Defendants in fact acknowledge the court *has* this authority. [ECF No. 176, p. 13.] This makes the issue moot and therefore the point should require little further discussion.

But even if the Court did not have discretion to hear this specific motion (which it undisputedly did), Defendants should have anticipated they would be held to the standards announced in the Court's rulings. This is because these rulings merely mirror standard evidentiary requirements for this type of evidence. Nonetheless, in an abundance of caution and

8

in the interest of being complete, the Court will still address the specific arguments raised in the motion.

Defendants devoted multiple pages to Federal Rule of Evidence 609 in their motion, but they state that "**only** in RODERICK ROLLE's case were the Defendants precluded from impeaching him under Rule 609," and so it appears their Rule 609 argument focuses exclusively on Rolle [ECF No. 176, p. 14 (emphasis added)]. Defendants acknowledge that their *only* evidence regarding Rolle's purported felony conviction was an Internet printout of Rolle's criminal history, which describes several charges that were "no actioned" and one charge on which adjudication was withheld after he pled guilty.[4] [*Id.* at p. 16]. In other words, Defendants admitted they had no evidence to substantiate their belief Rolle was ever *convicted* of a crime. *Cf. United States v. Canniff*, 521 F.2d 565, 567 (2d Cir. 1975) ("an arrest record alone would be a tenuous 'good faith' basis to support questions concerning prior convictions for crimes"). Thus, Rolle's alleged convictions were not admissible under Rule 609.

Concerning bias evidence under Federal Rule of Evidence 608, Defendants claim the Court erred by not allowing them to impeach Plaintiffs with evidence that Plaintiffs resented Phyllis Carswell's disapproval of their drug use and eventually fired them for cause, and by excluding evidence that some Plaintiffs purportedly filed false workers compensation claims.[5]

---

[4]   *See United States v. Georgalis*, 631 F. 2d 1199, 1203 n.3 (5th Cir. 1980) ("[A]djudication was withheld pending satisfactory completion of four years probation. Therefore, by exercise of Florida law there existed no conviction by which Georgalis could be impeached pursuant to Fed.R.Evid. 609"); *see also Eagan v. LaPlace Towing, Inc.*, Civ. A. No. 91-4623, 1993 WL 121237, at *2 (E.D. La. April 14, 1993) (holding "a guilty plea, without judgment entered by the court, does not constitute a 'conviction' for purposes of Fed.R.Evid. 608 and 609").

[5]   This new trial argument does not involve plaintiffs Elijah Glaster and Tony Thomas. Defendants concede the Court did not limit their impeachment of these two plaintiffs.

Federal Rule of Evidence 608(b)(1) provides as follows:

> (b) Specific Instances of Conduct. Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of:
>
> (1) the witness

It is important to emphasize that Rule 608 is discretionary – the trial court "*may*" admit such evidence, but is not required to permit the evidence. (emphasis added). The "extent to which a witness may be cross-examined for the purposes of showing bias rests on the sound discretion of the trial judge." *Howell v. American Live Stock Ins. Co.*, 483 F.2d 1354, 1357 (5th Cir. 1973); *accord* 33A Fed. Proc., L. Ed. § 80:159 (2011) (the "extent of impeachment under FRE 608(b) is expressly committed to the discretion of the trial court"); *see also United States v. Taylor*, 426 F. App'x 702, 705 (11th Cir. 2011) (evidentiary rulings made under Rule 608(b) are reviewed for an abuse of discretion).

Defendants cited no authority supporting their argument that the Court improperly excluded this evidence, the Court is aware of none, and it appears that the case law on this subject affirmatively supports the exact opposite conclusion. *See, e.g.*, *United States v. Clemons*, 32 F.3d 1504. 1511 (11th Cir. 1994) ("This circuit has long adhered to the proposition that a witness's use of drugs may not be used to attack his general credibility, but only his ability to perceive the underlying events and to testify lucidly at trial"); *Haught v. U.S. Eng'g Contractors Corp.*, No. 07-80436-CIV, 2009 WL 36591, *3 (S.D. Fla. Jan. 6, 2009) (determining that the motion in limine was moot but expressing the opinion that "whether Plaintiffs may have been fired, the nature of Plaintiffs' motivation in filing this action, and whether Plaintiff Gochenouer

used drugs during working and non-working hours is irrelevant to whether Defendants violated the FLSA").[6]

### e. DISCUSSION/ARGUMENT REGARDING GLADYS NOT ERROR

For the first time at trial, Defendants revealed that a female bookkeeper in their employ named Gladys maintained the timesheets. Defendants did not list Gladys in their initial disclosures or on their witness list and did not call Gladys to testify during the trial. Defendants' final argument is that the Court erred in permitting Plaintiffs' counsel to argue during closing argument that Defendants' failure to call Gladys supported Plaintiffs' contention that the time sheets were fabricated. [ECF No. 176, p. 20].

As an initial matter, the Court notes that Defendants' argument regarding Gladys is somewhat vague. Defendants argue that "Plaintiffs' counsel suggested to the jury that Defendants' failure to have called Gladys as a witness could support the Plaintiffs' case that the time sheets were fabricated." [ECF No. 176]. It is unclear, for instance, whether Defendants contend Plaintiffs' counsel specifically and overtly invited the jury to reach that conclusion (e.g., "you should conclude that Gladys' testimony would have demonstrated the timesheets were fabricated because Gladys was Defendants' bookkeeper and they could have, but did not, call her to testify"), or whether counsel merely mentioned Gladys, her position with Defendants, and then remarked that Defendants did not call any bookkeeper to testify.

---

[6] The primary cases Defendants rely on do not support their arguments. In *United States v. Abel*, 469 U.S. 45, 49-50 (1984), the Supreme Court held that admission of bias testimony under the particular facts of that criminal case was "warranted" and "within the District Court's discretion," but did not hold that it was required. In *United States v. Hall*, 653 F.2d 1002, 1007 (5th Cir. 1981), the former Fifth Circuit merely stated that, in a *criminal case*, if "the prosecution thought that the argument of defense counsel was improper, then its remedy is to seek curative instructions from the court," not that a civil defendant is entitled to rebut any character attack on the defendant by introducing, without limitation, whatever other evidence it wishes to attack a plaintiff's character.

Defendants did not file a transcript in support of their motion for a new trial. The Court's own recollection is that Plaintiffs' counsel only *mentioned* that Gladys was not called to testify but did not argue that this omission should be construed by the jury in Plaintiffs' favor. Defendants' failure to file the transcript means the Court must rely on its own memory and notes of the trial, which concluded nearly four months ago. *United States v. 213.43 Acres of Land*, 108 F. Supp. 446, 449 (D. N.D. 1952); *cf. Watson v. Unified Gov't of Wyandotte Cnty/Kansas City*, 70 F. App'x 493, 500 (10th Cir. 2003) ("The failure to file a transcript precludes review of the trial court's evidentiary rulings") (internal quotation marks and ellipsis omitted).

But even if Plaintiffs' counsel did make some suggestion along the lines claimed by Defendants, there was not necessarily anything improper about doing so. Two recent opinions by the Eleventh Circuit and Seventh Circuit support the right of counsel to remark on the significance of uncalled witnesses during closing argument. *See United States v. Walcott*, 431 F. App'x 860, 864-66 (11th Cir. 2011) (holding that defense counsel's decision during closing arguments to "argue to this jury where is Mr. Holt, why wasn't he called by the Government" and to at "numerous points in his closing argument . . . [take] the opportunity to comment on the government's failure to call Holt" constituted "legally tenable" closing arguments); *Lewis v. City of Chicago Police Dep't*, 590 F.3d 427, 444 (7th Cir. 2009) (no error when during closing arguments defense counsel criticized plaintiff for failing to produce corroborating witnesses, including several specific claimed-eyewitnesses, and then argued that this omission suggests certain alleged events never occurred).

In any event, even if there is contrary authority regarding the proper boundaries of this type of closing argument (and Defendants cited to none), it would be inappropriate to grant a

new trial based on a vague, transcript-free argument regarding a recollected factual scenario contrary to the memories of the Court or Plaintiffs' counsel.

Defendants contend that *Jones v. Otis Elevator Co.*, 861 F.2d 655, 658-59 (11th Cir. 1988) supports the granting of a new trial on this point concerning a comment about an absent witness. But *Otis* did not hold, as Defendants appear to contend, that commenting on a missing witness during closing argument is improper where that witness is equally available to both parties. *Otis* involved review of a trial court's decision to provide the jury with a "missing witness" instruction. The circuit court in that case did not review the fact that counsel *commented* on the witness' absence in closing argument (which happened but was not objected to by the other party). Defense counsel is conflating two related, but separate, issues in the motion (i.e., making comments to the jury in closing argument about an uncalled witness and giving a missing witness inference instruction). *See, e.g., Walls v. Armour Pharm. Co.*, 832 F. Supp. 1505, 1516 (M.D. Fla. 1993) (rejecting identical missing witness rule argument for a new trial based upon similar closing argument because "the missing witness rule does not apply in this situation"), *aff'd in relevant part by*, *Christopher v. Cutter Labs.*, 53 F.3d 1184, 1186 n.1 (11th Cir. 1995) ("The third issue on appeal, whether the district court erroneously allowed plaintiffs' counsel to make missing witness arguments, has no merit, and we will not address it in this opinion").[7] This final argument therefore does not support the granting of a new trial.

---

[7] Specifically, counsel in *Walls* argued to the jury: "Also ask yourselves why didn't you hear from any other hemophilia treaters on Armour's side of this case other than Dr. Levine? He was the only one who testified for them who was a hemophilia treater. Why didn't we hear from some of these other people with [National Hemophilia Foundation's] medical and scientific committee?" 832 F. Supp. at 1515.

## IV. CONCLUSION

For the reasons above, Defendants' motion is **DENIED**.

**DONE and ORDERED**, in Chambers, in Miami, Florida, this 19th day of January, 2012.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**

All counsel of record